UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ROBERT L.,
    *Plaintiff*,

v.

KILOLO KIJAKAZI,
  Acting Commissioner of Social Security,
    *Defendant*.

No. 3:22-cv-1421 (JAM)

### ORDER DENYING PLAINTIFF'S MOTION TO REVERSE AND GRANTING MOTION TO AFFIRM THE DECISION OF THE ACTING COMMISSIONER OF SOCIAL SECURITY

Plaintiff claims that he is disabled and unable to work.[1] He brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking review of the final decision of the Acting Commissioner of Social Security, who denied his claim for disability insurance.[2] Plaintiff has moved to reverse, and the Acting Commissioner has moved to affirm the decision.[3] For the reasons discussed below, I will deny Plaintiff's motion to reverse and grant the Acting Commissioner's motion to affirm.

#### BACKGROUND

The following facts are taken from transcripts provided by the Acting Commissioner.[4] In May 2019, Plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act.[5] His alleged disability began October 4, 2017.[6] The Social Security

---

[1] To protect the privacy interests of social security litigants while maintaining public access to judicial records, this Court will identify and reference Plaintiff solely by first name and last initial. *See* Standing Order – Social Security Cases, No. CTAO-21-01 (D. Conn. Jan. 8, 2021).
[2] Doc. #1; Doc. #17.
[3] Doc. #17; Doc. #19.
[4] *See* Doc. #15. Page references to the transcript are to the pagination generated on the Court's CM/ECF docket. For ease of reference, a citation to the internal Social Security Administration transcript number is provided in the form (Tr. *X*).
[5] Doc. #15 at 182–88 (Tr. 178–84).
[6] *Id.* at 182 (Tr. 178).

1

Administration ("SSA") initially denied Plaintiff's claims in July 2019, and again upon reconsideration in November 2019.[7] Plaintiff then filed a written request for a hearing.[8]

Plaintiff appeared with counsel and testified before an ALJ in a May 2021 hearing.[9] A vocational expert also testified.[10] In June 2021, after obtaining an additional medical source statement from a treating physician, the ALJ entered a decision concluding that Plaintiff was not disabled within the meaning of the Social Security Act.[11] The SSA Appeals Council denied Plaintiff's request for review in September 2022.[12] Plaintiff then filed this federal court action in November 2022.[13]

To qualify as disabled, a claimant must show that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which … has lasted or can be expected to last for a continuous period of not less than 12 months," and "the impairment must be 'of such severity that the claimant is not only unable to do her previous work but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.'" *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 45 (2d Cir. 2015) (quoting 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A)).[14] The SSA engages in the following five-step sequential evaluation process to determine whether a claimant is disabled:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of

---

[7] *Id.* at 87–90, 96–98 (Tr. 83–86, 92–94).
[8] *Id.* at 13–16 (Tr. 9–12).
[9] *Id.* at 34–51 (Tr. 30–47).
[10] *Id.* at 52–59 (Tr. 48–55).
[11] *Id.* at 17–29 (Tr. 13–25).
[12] *Id.* at 5–10 (Tr. 1–6).
[13] Doc. #1.
[14] Unless otherwise indicated, this order omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

> Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*Estrella v. Berryhill*, 925 F.3d 90, 94 (2d Cir. 2019); *see* 20 C.F.R. § 404.1520(a)(4). In applying this framework, if an ALJ finds a claimant to be disabled or not disabled at a particular step, the ALJ may make a decision without proceeding to the next step. *See* 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proving the case at Steps One through Four; the burden shifts to the Commissioner at Step Five to demonstrate that there is other work that the claimant can perform. *See McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).

At Step One, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since October 4, 2017, the alleged onset date.[15] At Step Two, the ALJ determined that Plaintiff suffered from the following severe impairments: retinal occlusion in his left eye, chronic obstructive pulmonary disease, and erythrocytosis.[16] The ALJ also noted Plaintiff's history of alcohol abuse disorder, but determined that Plaintiff's alcohol use was a non-severe impairment.[17] At Step Three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.[18]

The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 404.1567(c) except that he cannot climb ladders, ropes, or scaffolds, cannot be exposed to unprotected heights or moving mechanical

---

[15] Doc. #15 at 23 (Tr. 19).
[16] *Ibid.*
[17] *Ibid.*
[18] *Ibid.*

parts, and must avoid concentrated exposure to odors, dust, and other pulmonary irritants.[19] The ALJ further determined that Plaintiff can perform work involving no more than occasional far acuity.[20]

At Step Four, the ALJ determined that Plaintiff was unable to perform any past relevant work.[21] At Step Five, the ALJ relied on the testimony of a vocational expert who opined that a person of Plaintiff's age (58 as of the onset date), education (high school), work background, and RFC could perform the requirements of a cart attendant, floor waxer, and dining room attendant, positions which collectively represented approximately 219,000 jobs in the national economy.[22] The ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act since October 4, 2017.[23]

## DISCUSSION

The Court may "set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008); *see also* 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (*per curiam*). Absent a legal error, the Court must uphold the Commissioner's decision if it is supported by substantial evidence, even if the Court might have ruled differently had it considered the matter in the first instance. *See Eastman v. Barnhart*, 241 F. Supp. 2d 160, 168 (D. Conn. 2003).

---

[19] *Id.* at 24–27 (Tr. 20–23).
[20] *Id.* at 24, 26 (Tr. 20, 22).
[21] *Id.* at 27–28 (Tr. 23–24).
[22] *Id.* at 28–29 (Tr. 24–25).
[23] *Id.* at 29 (Tr. 25).

First, Plaintiff argues that the ALJ formulated Plaintiff's RFC "in the absence of supported medical opinions."[24] The record belies Plaintiff's argument. The ALJ considered several medical opinions and records in formulating Plaintiff's RFC, including those of internist and oncologist Dr. Katherine Harvey, Plaintiff's treating ophthalmologist Dr. Dan Kessler, state agency medical consultants Dr. Pamela Fadakar and Dr. Katrin Carlson, clinical psychologist Dr. Wendy Underhill, and Plaintiff's treating physician Dr. Roy E. Hitt, Jr.[25]

In any event, an ALJ need not rely on medical opinion evidence in formulating an RFC.[26] *See* 20 C.F.R. § 404.1520c(a)("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."); *see, e.g.*, *Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108, 109 (2d Cir. 2020) ("[A]lthough there was no medical opinion providing the specific restrictions reflected in the ALJ's RFC determination, such evidence is not required when the record contains sufficient evidence from which an ALJ can assess the claimant's residual functional capacity.").

Second, Plaintiff argues that the ALJ left out relevant exertional limitations in his RFC determination—in particular, Plaintiff's visual and pulmonary limitations.[27] But the ALJ took into account Plaintiff's visual and pulmonary limitations when determining Plaintiff's RFC. The

---

[24] Doc. #17-1 at 6, 9–10.
[25] *See* Doc. #15 at 25–27 (Tr. 21–23); *see also id*. at 71, 82 (Tr. 67, 78) (names of state agency medical consultants).
[26] According to the Acting Commissioner, "Plaintiff suggests that the ALJ should not have interpreted medical evidence without the assistance of a medical source." Doc. #19-1 at 7. I do not understand Plaintiff to make this argument. Instead, I understand Plaintiff to argue that the ALJ should have relied on medical opinion evidence in determining Plaintiff's RFC. *See* Doc. #17-1 at 9 ("Unfortunately, the ALJ really had no reliable way to formulate Mr. Libby's RFC description, because he did not rely on opinion evidence."). To the extent the Acting Commissioner's characterization of Plaintiff's argument is correct, I agree with the Acting Commissioner that Plaintiff is mistaken for substantially the reasons stated in the Acting Commissioner's memorandum. *See* Doc. #19-1 at 7 (noting that 20 C.F.R. § 404.1545(a) "direct[s] the ALJ to assess the RFC based on all the relevant evidence in your case record, including medical evidence" (quotation marks omitted)).
[27] Doc. #17-1 at 6–10.

5

ALJ took into account Plaintiff's pulmonary limitations by "includ[ing] an environmental limitation in the residual functional capacity to address the symptoms of chronic obstructive pulmonary disease"—in particular, by specifying that Plaintiff "must avoid concentrated exposure to odors, dust, and other pulmonary irritants."[28] And the ALJ took into account Plaintiff's visual limitations by "preclud[ing] the claimant from climbing ladders, ropes or scaffolds," "preclud[ing] him from exposure to unprotected heights or to moving mechanical parts," and limiting Plaintiff to work involving no more than "occasional far acuity."[29]

Relatedly, Plaintiff argues that the record does not support the ALJ's finding that Plaintiff can lift 25–50 pounds.[30] Plaintiff is mistaken. Although Plaintiff testified that he could lift no more than 5 to 10 pounds,[31] the ALJ found Plaintiff's testimony "not entirely consistent with the medical evidence and other evidence in the record."[32] The ALJ noted that medical reports from Dr. Hitt and Dr. Harvey contained "essentially normal physical examination findings."[33] For example, several physical examinations by Dr. Harvey found that Plaintiff exhibited normal strength and minimal difficulty breathing on exertion.[34] And Dr. Hitt determined in 2017 that "Mr. Libby may return to work with no restrictions, except he may not drive a motor vehicle"—a

---

[28] Doc. #15 at 24, 26 (Tr. 20, 22).
[29] *Ibid.*
[30] Doc. #17-1 at 7–10.
[31] Doc. #15 at 48 (Tr. 44).
[32] *Id.* at 25 (Tr. 21).
[33] *Id.* at 26 (Tr. 22).
[34] *Id.* at 15 at 438–39 (Tr. 434–35) (November 2019 examination noting "Minimal dyspnea on exertion, no shortness of breath at rest," and "Normal strength"); *id.* at 328–29 (Tr. 324–25) (May 2019 examination noting "Minimal dyspnea on exertion, no shortness of breath at rest," and "Normal strength"); *id.* at 332 (Tr. 328) (February 2019 examination noting "Normal strength"); *id.* at 334–35 (Tr. 330–31) (November 2018 examination noting "Minimal dyspnea on exertion, no shortness of breath at rest," and "Normal strength"); *id.* at 337 (Tr. 333) (October 2018 examination noting "Normal strength"); *see also id.* at 512 (Tr. 508) (March 2021 examination by Dr. Hitt noting that Plaintiff "has not had any major difficulty breathing on his present medications"); *id.* at 501 (Tr. 597) (September 2020 examination by Dr. Hitt noting that Plaintiff "has not had any shortness of breath"); *id.* at 391 (Tr. 387) (April 2019 examination by Dr. Hitt noting that Plaintiff "says he does not have any difficulty breathing in his usual activities").

finding that the ALJ found to be "consistent with an ability to perform work activity at the medium exertional level."[35]

Plaintiff also takes issue with the ALJ's partial discounting of the opinions of Dr. Hitt, who in his 2021 medical source statement "limited the claimant to a sedentary work capacity with the need for a sit-stand option" and "precluded the claimant from lifting twenty pounds and from performing postural maneuvers except for rarely twisting and stooping."[36] The ALJ reasoned that "[t]he medical evidence of record supported some environmental limitations, but the doctor's treatment records do not reveal treatment for back pain resulting in such a limited physical capacity."[37]

Plaintiff argues that the ALJ "equat[ed] exertional limitations only with back pain, as if back pain is the only factor that could cause exertional limitations."[38] But the ALJ also discounted Dr. Hitt's opinion because "[t]here was no objective medical evidence to support the manipulative limitations [Dr. Hitt] cited and only rare evidence of shortness of breath or dyspnea on exertion."[39] Also, as explained above, Dr. Hitt wrote in 2017 that "Mr. Libby may return to work *with no restrictions*, except he may not drive a motor vehicle."[40] Accordingly, I do not agree with Plaintiff that the ALJ improperly discounted Dr. Hitt's opinion.

Plaintiff further argues that his retinal occlusion, dyspnea, and erythrocytosis are greater exertional limitations than the ALJ made them out to be because their combined effect could lead to blood clotting.[41] Plaintiff did not raise this concern until now, so I cannot conclude that the

---

[35] *Id.* at 27, 293 (Tr. 23, 289).
[36] *Id.* at 27 (Tr. 23).
[37] *Ibid.*
[38] Doc. #17-1 at 10.
[39] Doc. #15 at 27 (Tr. 23) (citing *id.* at 277–296, 389–410, 443–468, 474–521 (Tr. 273–292, 385–406, 439–464, 470–517)).
[40] *Id.* at 293 (Tr. 289) (emphasis added).
[41] Doc. #17-1 at 8–9.

7

ALJ's analysis was deficient in not considering the possibility of blood clotting. *Cf. Brown v. Comm'r of Soc. Sec.*, 709 F. Supp. 2d 248, 250 n.1 (S.D.N.Y. 2010) ("[Claimant] did not raise chronic lung disease with emphysema as a basis for his claim before the [SSA] … Also, in his complaint, Brown now alleges that his disabilities began on December 31, 2003…. Because these matters were not raised before the agency, we cannot conclude that the agency erred in its failure to consider them.").

In lieu of citations to the record, Plaintiff cites medical research studies. But speculation regarding potential medical complications does not call into question an ALJ's RFC determination. *See, e.g.*, *Weick v. Astrue*, 2008 WL 5378308, at *5 (W.D. Wash. 2008) ("[M]erely stating a claimant may be at risk for a particular medical complication does not mean that it will happen, and thus it remains purely speculative as to whether such a risk will result in future work-related symptoms."); *Kellie F. v. Kijakazi*, 2022 WL 203242, at *12 (D.N.J. 2022) (rejecting claimant's argument that her fibromyalgia could cause upper respiratory infections which "could potentially cause time off task" as "simple rank speculation unsupported by any medical opinion" (emphasis omitted)). In short, the ALJ did not err by not considering the possibility that Plaintiff's conditions may lead to blood clotting.

Third, Plaintiff argues that the ALJ left out relevant non-exertional limitations in his RFC determination. In particular, Plaintiff argues that the RFC limitations relating to Plaintiff's vision problems do not adequately account for Plaintiff's retinal occlusion.[42] Plaintiff repeatedly cites Dr. Dan Kessler, Plaintiff's treating ophthalmologist, to support his account of persistent vision problems. But Dr. Kessler's medical opinion—that "his vision should not have an impact on"

---

[42] *Id.* at 11.

"his ability to carry out work related activities"—undermines Plaintiff's argument that his vision impairments are severe.[43]

Moreover, apart from listing evidence of Plaintiff's vision problems, Plaintiff's only specific objection to the ALJ's non-exertional limitations is that "[t]he ALJ should have explained how a limitation to occasional far acuity accounts for [Plaintiff's] lack of depth perception, and constant visual distortion due to blur."[44] But the ALJ noted Plaintiff's reported difficulty with depth perception and his blurry vision, and based his RFC limitations on Plaintiff's ability to climb and his exposure to heights and moving mechanical parts on Plaintiff's blurry vision.[45] The ALJ provided a different explanation for limiting Plaintiff to work involving no more than occasional far acuity: first, Plaintiff admitted he is still able to drive, notwithstanding his vision problems, and second, Plaintiff "wears glasses for distance and for reading."[46] On this basis, I cannot conclude that the ALJ's RFC determination was erroneous, much less unsupported by substantial evidence.

## CONCLUSION

For the reasons set forth above, the Court DENIES Plaintiff's motion to reverse (Doc. #17) and GRANTS the Acting Commissioner's motion to affirm (Doc. #19). The Clerk of Court shall close this case.

It is so ordered.

Dated at New Haven this 9th day of June 2023.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge

---

[43] Doc. #15 at 298 (Tr. 293).
[44] Doc. #17-1 at 11–12.
[45] Doc. #15 at 24, 26 (Tr. 20, 22).
[46] *Id.* at 26 (Tr. 22); *see also id.* at 39 (Tr. 35) (Plaintiff answering "Yes" to "Are you still able to drive?").